OPINION
Appellants, the children of a ward, appeal from the decision of the Columbiana County Common Pleas Court, Probate Division, which permitted the guardian-appellee to place the ward in a nursing home and ordered the guardian to file a request to sell the ward's realty if appellants do not enter a court-approved rental agreement for use of the realty within sixty days. For the following reasons, the decision of the trial court is affirmed.
 STATEMENT OF FACTS
As a result of poor short term memory, scattered thoughts and difficulties with comprehension, Roland S. Rice, the ward, was diagnosed with Alzheimer's disease. In March 1999, James Rice, the ward's son who is now deceased, sought to be appointed guardian of his father's person and estate, and the ward's two other sons consented.
The ward's daughter, Karla Joseph, also sought this appointment. Karla lives with her father in his house with her two children. She has lived in this house with her father rent-free her entire life, almost forty years. On the ward's forty-one acres surrounding his house is another house in which the ward's granddaughter lives.
Rather than appoint one of the ward's children as guardian, the court appointed a distant relative. On June 16, 1999, Amy Hartline-Palmer was appointed guardian of the person and estate of the ward. However, the ward continued to live in his home with Karla as his caregiver. The guardian paid the ward's bills and issued checks to Karla for the purchase of household goods.
On February 9, 2000, the guardian filed a petition for instructions. This petition sought the court's permission to place the ward in a nursing home. The ward's children, Karla, Richard and Roland F., filed objections to the guardian's petition. On March 22, 2000, the court held a hearing on the petition and on other matters not relevant to this appeal.
An employee of the Columbiana County Veterans' Office testified that the ward drove himself to the office many times, the last time being in February 2000. (Tr. 7). A teller from Sky Bank testified that the ward entered the bank and inquired if he might get more information on his account if he returned with his shotgun and began shooting people. (Tr. 18). The guardian testified that the ward has poor personal hygiene and often smells. She stated that it was difficult to control his behavior and the intake of his medication. The guardian stated that the ward was being left home alone and obtaining access to an automobile even though his driver's license had been revoked on recommendations of his doctor. She claimed that the kitchen of the house was untidy and that she noticed dog urine and feces on the floor. She also voiced concern that Karla was spending the ward's money on herself and her children rather than on the ward's care. She opined that the ward needs twenty-four hour supervision in a nursing home which would ensure a balanced diet, proper hygiene and the regular ingestion of medication and deny the ward access to a car and a gun. (Tr. 39-40).
Karla testified that she uses the money given to her by the guardian to buy food for the ward and supplies for the house. She stated that she has lived with her father rent-free her whole life. She said that she cooks regular meals and engages in all of the housekeeping activities for her father. Karla also testified that she gives her father his high blood pressure medication every day. (Tr. 66-67). She admitted that she has left the ward home alone at times but noted that the guardian never instructed her otherwise on this matter or on any other matter concerning the care of her father. (Tr. 67-70). Lastly, she testified that the ward has declared that he will end his own life rather than be placed in a nursing home. (Tr. 78).
On April 26, 2000, the court filed a judgment entry which authorized the guardian to arrange an out-of-home placement for the ward. The court also ordered the guardian to file a land sale proceeding unless the guardian enters into a court-approved rental agreement within sixty days with those residing in the two homes on the ward's realty. The ward's children, hereinafter appellants, filed timely notice of appeal.
 ASSIGNMENTS OF ERROR
Appellants set forth the following two assignments of error:
 "THE TRIAL COURT ERRED IN GRANTING TO THE GUARDIAN THE RIGHT TO PLACE THE WARD OUTSIDE OF HIS HOME."
 "THE TRIAL COURT ERRED IN GRANTING TO THE GUARDIAN THE RIGHT TO SELL THE REAL PROPERTY OF THE WARD."
Appellants complain that neither the guardian nor the court considered the alternatives to a nursing home. Appellants blame the guardian for many of the problems that resulted in the court's order of placement of the ward. Appellants note that the guardian failed to produce medical testimony to establish that the ward should be placed in a nursing home. Appellants conclude that the Probate Court abused its discretion and arrived at a decision that was contrary to the weight of the evidence.
 LAW
A guardian of the person is obligated to protect and control the ward and provide suitable maintenance. R.C. 2111.13(A)(1) and (2). A guardian of the person may also authorize the provision of medical, health or other professional care. An interested party may file objections with the Probate Court as did appellants in this case. R.C. 2111.13(C).
A guardian of the estate may lease the ward's realty for a period of less than three years without approval of the Probate Court. R.C. 2111.25. In order to sell the ward's realty, the guardian must file a civil action asking the Probate Court for authority to sell the ward's realty. R.C.2127.05.
 ANALYSIS
The trial court found that the evidence "clearly revealed" that the ward is in need of constant supervision. The court also found that the supervision provided by Karla has been "inadequate." The court gave the pattern of unlicensed driving and the bank incident as examples of the inadequate supervision. The court stated that credible evidence was presented indicating a lack of cleanliness in the home and inadequate personal hygiene. Medical testimony is not required to prove these items.
The court's decision is supported by some competent and credible evidence. The trial court is in the best position to judge the credibility of the witnesses. Myers v. Garson (1993), 66 Ohio St.3d 610,614; Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. In authorizing the guardian to place the ward in a nursing home, the Probate Court exercised its discretion as the superior guardian of the ward. R.C. 2111.50(A). See, also, R.C. 2111.50(F) (stating that the Probate Court has full parens patriae powers when considering questions related to treatment of incompetents). The Probate Court's evaluation of the evidence presented and conclusions drawn therefrom does not appear to be arbitrary, unreasonable or unconscionable. See In re Skrobut (Sept. 10, 1999), Mahoning App. No. 98CA38, unreported, 2. Hence, appellants' first assignment of is overruled.
Finally, contrary to the language of appellants' second assignment of error,[1] the court did not grant the guardian the right to sell the realty. The court merely ordered the guardian to begin a land sale proceeding if a rental agreement is not reached. As aforementioned, the court cannot grant the guardian the right to sell the property until the guardian commences a civil action asking the Probate Court for authority to sell the ward's realty under R.C. 2127.05. As the court noted, appellants will receive notice of and become parties to this action pursuant to R.C. 2127.13. Thus, this assignment of error is without merit.
For the foregoing reasons, the judgment of the Probate Court is hereby affirmed.
Donofrio, J., concurs, Waite, J., concurs.
[1] It should be noted that this assignment of error is set forth in a sentence, but it is not separately argued by appellants in the text of their brief.